IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEPTUNE COMPANY ASSET HOLDINGS, LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PLEASANT HILL REDEVELOPMENT AGENCY,<br><br>　　　　Defendants.<br>_____/ | No. 09-03535 JSW<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

Now before the Court is the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted filed by Defendant Pleasant Hill Redevelopment Agency (the "Agency"). The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for January 15, 2010 is HEREBY VACATED. Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby DENIES the Agency's motion to dismiss.

**BACKGROUND**

On November 17, 1999, the Agency entered into a Disposition and Development Agreement ("DDA") with developer Greystone Homes (the "Developer"). (First Amended Complaint ("First Am. Compl.") ¶ 13, Exhibit ("Ex.") B.) The purpose of the DDA was to

develop certain parcels of land in the city of Pleasant Hill, California. (*Id*. ¶ 14.) Pursuant to the DDA, the Agency was to compensate the Developer for costs it incurred in connection with the project. (*Id*. ¶ 15.) The Agency agreed to pay the Developer future tax increment payments up to an agreed upon limit. (*Id*.) The Developer was to receive a maximum of $2,507,000 in net present value. (*Id*.)

On October 24, 2002, the Agency issued a Promissory Note ("Note") to secure the obligation to pay the developer. (*Id*. ¶ 13, Ex. A.) From 2002 to 2004, the Agency made payments under the Note to the Developer under the "Original Formula."[1] (*Id*. ¶ 17.) The Original Formula was consistent with the DDA and the Note. (*Id*. ¶ 16.)

In October 2004, Neptune Company Asset Holdings, LLC ("Neptune") became interested in purchasing the Note from the Developer. (*Id*. ¶ 18.) As part of its due diligence, Neptune sought documentation regarding the specific methodology used to calculate the payments. (*Id*., Ex. C at 151.) Neptune also asked for documentation of payments and inquired about the balance due under the Note. (*Id*.)

On October 29, 2004, the Agency's Redevelopment Administrator Robert Stewart responded to Neptune's inquiries. (*Id*. ¶ 19, Ex. D at 153-214.) Stewart stated that the payment calculation methodology was the Original Formula used to pay the Developer. (*Id*. ¶ 19, Ex. D at 175-84.) Stewart provided copies of payment statements and the calculation formula. (*Id*.) Stewart also stated that the balance due under the Note was $2,676,953.00. (*Id*. ¶ 19.)

Neptune acquired the Note from the Developer on December 7, 2004 (the "Assignment"). (*Id*. ¶ 22, Ex. E.) The Agency's Executive Director Michael Ramsey signed the agreement assigning the Note to Neptune. (*Id*. ¶¶ 21-22, Ex. E at 218.) The Assignment agreement provided that the balance due under the Note was $2,676,953. (*Id*. ¶ 22, Ex. E at 218.)

---

[1] The formula called for the Agency to take the beginning balance of the Developer Reimbursement, add eight percent to that beginning balance (on the first day of the fiscal period), and then apply payments made to the Developer against the obligation, thereby arriving at the fiscal year end balance. (First Am. Compl. ¶ 16.)

On January 31, 2005, Neptune received an incorrectly calculated payment. (*Id.* ¶ 24.) Neptune brought the issue to the attention of the Agency. (*Id.* ¶ 25.) On April 22, the Agency corrected the payment methodology. (*Id.* ¶ 26, Ex. F at 220.) The Agency made payments on the Note under the Original Formula for three years. (*Id.* ¶ 29.) Neptune refers to the Note, DDA, October 29, 2004 letter, Assignment, and April 22, 2005 letter collectively as the "Agreement." (*Id.* ¶ 27.)

On August 4, 2008, the Agency announced that it was changing the payment formula. (*Id.* ¶ 30, Ex. G at 227.) The Agency stated that it would use a different formula ("New Formula") to retroactively recalculate payments. (*Id.* ¶ 31, Ex. G at 227.) Under the New Formula, the balance due to Neptune as of the date of the assignment was $2,104,173.15. (*Id.*)

Based on these allegations, Neptune brings claims for (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) declaratory relief; (4) specific performance; (5) promissory estoppel; (6) money had and received; (7) account stated; (8) open book account; and (9) equitable estoppel. (*Id.* ¶¶ 41-78.)

The Agency moves to dismiss Neptune's claim for promissory estoppel pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Neptune contends that the Agency is bound to its representations of the amount outstanding on the Note under a theory of promissory estoppel. (*Id. ¶¶ 57-61.*) *Neptune* argues that the Agency knew or should have reasonably expected that the representations and warranties made by the Agency to Neptune would induce action or forbearance by Neptune. (*Id.* ¶ 59.) Neptune asserts that it reasonably relied on such representations and suffered damages in excess of $575,000. (*Id.* ¶ 61.)

**ANALYSIS**

**A.    Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 123 S. Ct. 1937, 1940 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. ... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 123 S. Ct. at 1940 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.      The Agency's Motion to Dismiss.**

The Agency asserts that the application of promissory estoppel would (1) create contractual liability for the Agency contrary to statute and (2) defeat important public policies. Neptune contends that the Agency had the proper authority to enter into the Agreement modifying the terms of the original agreement and that public policy would not be violated by the application of promissory estoppel.

Under California law, promissory estoppel applies when a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance" would result in an "injustice" if the promise were not enforced. *Kajima/Ray Wilson v. Los Angeles County Metro. Transp.*, 23 Cal. 4th 305, 310 (2000) (quoting Rest. 2d Contracts, § 90, subd.(1)).

4

### 1. Statutory Authority to Alter the Existing Contract.

The Agency contends that promissory estoppel cannot be applied to enforce a contract made in excess of the Agency's express statutory authority. The Agency argues that because any change to the Agreement did not comply with relevant statutory requirements, it lacked the authority to modify the express terms of the DDA. The Agency asserts that the resulting Agreement is therefore void and unenforceable by promissory estoppel. Neptune argues that the Agency had authority to enter into an agreement modifying the DDA on the basis of: (1) the Agency's course of conduct; (2) the language contained in the Note; (3) the DDA's grant of authority to the Agency's Executive Director to effectuate the agreement's intent; and (4) the broad powers granted to the Agency under California Health and Safety Code sections 33391 and 33125(c).

The Agency cites to a number of cases for the proposition that promissory estoppel cannot be applied against the Agency under the circumstances alleged in the complaint. However, the Court finds the cases relied upon by the Agency to be distinguishable. Citing *First Street Plaza Partners v. City of Los Angeles*, 65 Cal. App. 4th 650 (1998), the Agency broadly asserts that promissory estoppel cannot be applied against a state agency. In *First Street*, the plaintiff engaged in extensive negotiations with the defendant agency over a redevelopment project. *Id.* at 654-660. The plaintiff spent millions of dollars preparing reports and obtaining permits. *Id*. at 659. The city counsel ultimately rejected the plaintiff's proposal. *Id*. at 658. The court rejected the application of promissory estoppel, noting that the city charter required all contracts to be in writing. *Id*. at 662, 667-670. The court concluded that because the city did not comply with the procedural requirements set forth in its own charter, no contract had been formed and the city was not estopped from denying its existence. *Id*. at 670.

The Agency points to numerous decisions in which California courts have rejected the application of promissory estoppel against state agencies. However, each case the Agency cites to had a specific statute which barred the state agency from forming the disputed agreement. *See, e.g., Poway Royal Mobilehome Owners Ass'n*, 149 Cal. App. 4th 1460, 1471 (2007) (holding that promissory estoppel could not be applied to enforce an oral contract against a

5

public entity that statutorily required contracts to be in writing); *State of California v. Haslett Co.*, 45 Cal. App. 3d 252, 256-58 (1975) (declining to apply promissory estoppel to enforce an oral promise when statutory requirements called for contract to be in writing); *Zottman v. City and County of San Francisco*, 20 Cal. 96, 105-08 (1862) (holding that promissory estoppel could not be applied against a city when the city charter provided for the exclusive means of entering into a contract and those formalities were disregarded).

In *First Street*, the alleged contract violated a specific provision calling for all contracts to be in writing and approved by the city attorney. 65 Cal. App. 4th at 662. Similarly, the disputed agreements in *Poway Royal*, *Haslett*, and *Zottman* all violated specific statutory provisions. 149 Cal. App. 4th at 1471; 45 Cal. App. 3d at 256-58; 20 Cal. at 105-08. Here, as distinct from *First Street*, *Poway Royal*, *Haslett*, and *Zottman*, the Agency fails to point to a similar specific provision which the Agreement violates. The Agency does not point to any provision precluding it from entering into the disputed Agreement which altered the terms of the DDA. While the Court notes that entering into the DDA is heavily regulated by statute, it is unclear why the Agency would be precluded from entering into an agreement modifying or interpreting the terms of the DDA. The Agency has failed to show what specific procedure Neptune would have to follow to enter into the disputed Agreement.

Having found the cases that the Agency relies on to be distinguishable, the Court finds that *US Ecology, Inc. v. State of California* provides a helpful framework for analyzing the Agency's arguments. 92 Cal. App. 4th 113 (2001). In that case, the court was presented with a similar dispute. *See id*. at 130-37. The court held that a trial court improperly sustained a demurrer dismissing a claim for promissory estoppel against the California State Department of Health Services. *Id*. at 130-35. The defendant state agency argued that it could not be bound to an agreement under a theory of promissory estoppel. *Id*. at 130-37. The state agency asserted, as the Agency does here, that it lacked the statutory authority to enter into the disputed contract, making it void and unenforceable by virtue of the operation of promissory estoppel. *Id*. at 131. The court recognized that liability could not be assessed against a state agency if a contract was not statutorily authorized. *Id*. at 132 (citing *Air Quality Prods., Inc. v. State of California*, 96

Cal. App. 3d 340, 350 (1979)). Similar to the Agency here, the defendant state agency in *US Ecology* also argued that promissory estoppel could not be applied when doing so would violate public policy. *US Ecology*, 92 Cal. App. 4th at 131.

In *US Ecology*, the court first analyzed whether the relevant statute granted express authority to the state agency to enter into the disputed agreement. *Id*. at 131-32. Second, the court considered whether the statutory scheme implicitly granted authority to the state agency to enter into the agreement. *Id*. at 132-35. The court analyzed "the statutory scheme as a whole" and found that the State intended to imbue the agency with authority to make "binding promises." *Id*. at 132-33. Third, the court addressed the parties' arguments concerning public policy. *Id*. at 136. The court found that it was inappropriate to dismiss the complaint on the basis of public policy at such an early procedural stage. *Id*. at 135.

### i. Express Authority.

Following the analysis *US Ecology*, this Court first turns to the issue of whether the Agency had express authority to enter into the Agreement altering the terms of the existing contract. The general rule is that "[t]o be valid, administrative action must be within the scope of authority conferred by the enabling statutes." *Terhune v. Superior Court*, 65 Cal. App. 4th 864, 872-73 (1998). "If the court determines that a challenged administrative action was not authorized by or is inconsistent with acts of the Legislature, that action is void." *Id*. at 873; *see also Zottman*, 20 Cal. at 101-02. Administrative agencies are thus limited in their ability to enter into legally binding contracts or to make enforceable promises. *US Ecology*, 92 Cal. App. 4th at 132. A party contracting with a state agency "is bound to take notice of limitations on its power to contract and also of the power of the particular officer or agency to make the contract." *G.L. Mezzetta, Inc. v. City of American Canyon*, 78 Cal. App. 4th 1087, 1094 n.4 (2000).

Neptune argues that California Health and Safety Code section 33125(c) expressly allows state agencies to make and execute contracts as "reasonably necessary" to the exercise of their powers. *See* Cal. Health & Safety Code § 33125(c). Neptune contends that because of the apparent latitude granted to redevelopment agencies by the statute, the Agency here was acting

7

within its express authority to enter into the Agreement. Neptune further contends that the Agency's conduct supports this proposition in that it entered into the Assignment, and even amended the Assignment, without a public hearing or full Board approval.

Furthermore, Neptune argues that the DDA and a Board Resolution granted the Agency's Executive Director authority to amend the DDA. Neptune refers to the language in the Board Resolution providing that the Agency's Executive Director was further authorized and directed to "take such further action and execute such documents as are necessary to carry out the DDA." (First Am. Compl., Ex. B.) This language appears support the proposition that the Agency was explicitly empowered to alter the DDA as necessary. Further, Neptune argues that the terms of the note explicitly provided that the amount due would be variable.

Here, the Agency fails to point to any specific statutory provision prohibiting the Agency from entering into the Agreement that altered the terms of the DDA. Instead, the Agency states that entering into Disposition and Development Agreements is a highly regulated process. The Agency argues that because initial formation of the DDA is subject to so many requirements, any subsequent change to the original contract must be regulated by those same procedures. However, as no such express statutory provision has been brought to the attention of the Court, this proposition lacks support. The Court was further unable to locate any such provision. Accordingly, for the purposes of this motion, Neptune's claim that the Agency had express authority to alter the terms of the DDA has facial plausibility. *See US Ecology*, 92 Cal. App. 4th at 132; *Iqbal*, 123 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556).

### ii. Implied Authority.

Following the analysis from *US Ecology*, the Court next analyzes the issue of whether the Agency had implied authority to enter into the Agreement altering the terms of the DDA. Administrative officials "may exercise such additional powers as are necessary for the due and efficient administration of powers expressly granted by statute, or as may fairly be implied from the statute granting the powers." *US Ecology*, 92 Cal. App. 4th at 132 (quoting *Calfarm Ins. Co. v. Deukmejian*, 48 Cal. 3d 805, 824 (1989)). "Thus, an administrative agency has the power to contract on a particular matter if this power may be fairly implied from the general statutory

8

scheme." *US Ecology*, 92 Cal. App. 4th at 132; *see also Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240, 248 (1969) (holding that an irrigation district impliedly had authority to enter into an agreement based on its enabling statutes); *Dickey v. Raisin Proration Zone No. 1*, 24 Cal. 2d 796, 810-11 (1944) (holding that a state agricultural agency had authority to negotiate a pledge agreement based on the broad powers conferred to it by the legislature).

The State of California has granted authority to state redevelopment agencies to redevelop parcels of land. *See* Cal. Health & Safety Code §§ 33100-38000. Redevelopment agencies have a substantial mandate to build affordable housing for the citizens of California. *See* Cal. Health & Safety Code § 33071 ("[A] fundamental purpose of redevelopment is to expand the supply of low- and moderate-income housing, to expand employment opportunities for jobless, underemployed, and low-income persons, and to provide an environment for the social, economic, and psychological growth and well-being of all citizens.") Under California Health and Safety Code section 33125(c), an agency may "[m]ake and execute contracts and other instruments necessary or convenient to the exercise of its powers." Cal. Health & Safety Code § 33125(c). Additionally, redevelopment agencies "promote the sound development and redevelopment ... through the employment of all appropriate means." Cal. Health & Safety Code § 33037(a).

Here, it appears that the Agency may have had implied authority to enter into the disputed Agreement. *See US Ecology*, 92 Cal. App. 4th at 132. Neptune asserts that the Agency and its officers were exercising powers necessary for the efficient administration of powers expressly granted in this statute. *See id.* The Agency communicated with Neptune regarding the value of the Note and entered into the Assignment and a later adjustment to the payment methodology. (First Am. Compl. ¶¶ 19, 22, 31.) By executing the substantial mandate of Health and Safety Code section 33071, the Agency has been granted broad authority to employ "all appropriate means" and to "[m]ake and execute contracts and other instruments necessary or convenient to the exercise of its powers." *See* Cal. Health & Safety Code §§ 33125(c), 33037(a). Similar to *US Ecology*, the administrative officials in the instant case appear to have exercised powers fairly implied by the broad powers conferred by statute. *See*

9

*US Ecology*, 92 Cal. App. 4th at 132. Therefore, even if no statute explicitly grants the Agency's Executive Director authority to enter into the disputed Agreement altering the terms of the DDA, it appears that the statutory scheme may grant them the power to do so. *See id*.

Accepted as true for the purposes of this motion, the facts as pled in the complaint are sufficient to demonstrate that the Agency had implied authority to enter into the Agreement modifying the terms of the DDA. *See id.* Because the Agency had authority to enter into the Agreement, the action is not void and can be enforced by estoppel. *See Terhune*, 65 Cal. App. 4th at 872-73; *US Ecology*, 92 Cal. App. 4th at 132. Neptune's claim has facial plausibility because the factual content of the complaint allows the Court to draw the reasonable inference that the Agency is potentially liable for the misconduct alleged. *See Iqbal*, 123 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556).

### 2. Public Policy.

The third step of the analysis from *US Ecology* is to determine whether the application of promissory estoppel would defeat public policy. 92 Cal. App. 4th at 135. The Agency asserts that state laws requiring public hearing and approval of the DDA promote public input and scrutiny regarding expenditure of public funds. Neptune counters that the public is served by encouraging developers and lenders to participate in affordable housing projects.

The Supreme Court of California has ruled that the principles of promissory estoppel apply to claims against the government where the application of the doctrine would further public policies and prevent injustice. *See, e.g., Kajima/Ray Wilson*, 23 Cal. 4th at 316-17. In *US Ecology*, the defendant asserted that contracting away the State's ability to protect its citizens by way of promissory estoppel would violate public policy. 92 Cal. App. 4th at 135. Nevertheless, the court allowed the estoppel claim to survive demurrer because the plaintiff had stated facts that could demonstrate that the State's actions violated public policy. *Id*.

Here, similar to *US Ecology,* Neptune has alleged sufficient facts indicating that Neptune detrimentally relied on the Agency's representations, which resulted in an injustice. *See* 92 Cal. App. 4th at 131; First Am. Compl. ¶¶ 21-31. The Court cannot find as a matter of law at this procedural stage that denying the Agency's motion to dismiss would harm an

important public policy. *See US Ecology*, 92 Cal. App. 4th at 131. Accordingly, Neptune has alleged sufficient facts to state a claim to relief that is plausible on its face. *See Iqbal*, 123 S. Ct. at 1940.

## CONCLUSION

For the foregoing reasons, Agency's motion to dismiss is DENIED. The initial case management conference scheduled for January 15, 2010 at 9:00 a.m. is HEREBY CONTINUED to January 15, 2010 at 1:30 p.m.

**IT IS SO ORDERED.**

Dated: January 8, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE